UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MICHAEL C. WILLIAMS,

                Petitioner,

    v.

RANDY E. BLADES, LAWRENCE G.
WASDEN, and HENRY ATENCIO,

                Respondents.

Case No. 1:14-cv-00018-BLW

**MEMORANDUM DECISION AND
ORDER**

       Pending before the Court is a First Amended Petition for Writ of Habeas Corpus

filed by Idaho state prisoner Michael C. Williams ("Petitioner" or "Williams"),

challenging Petitioner's state court conviction. (Dkt. 15.) The Petition is now fully

briefed and ripe for adjudication. The Court takes judicial notice of the records from

Petitioner's state court proceedings, which have been lodged by Respondent. (Dkt. 20.)

*See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

       Having carefully reviewed the record in this matter, including the state court

record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R.

7.1(d). Accordingly, the Court enters the following Order (1) dismissing all but one of

Petitioner's claims as noncognizable or procedurally defaulted and (2) denying the

remaining claim on the merits.

# BACKGROUND

The following facts are taken from the decision of the Idaho Court of Appeals on appeal from the dismissal of Petitioner's state post-conviction petition:

> Williams and his brother, Doug, exited a bar to return home. Upon exiting, Doug entered into a dispute with some other men, while Williams opened his pickup door and sat down inside. After learning of the dispute, one of the men, Chris Adams, broke a beer bottle on the ground and began to walk towards Williams. A verbal altercation ensued, and Williams produced a gun and shot Adams three times in the chest, killing him.

(State's Lodging D-6 at 1.) A jury found Petitioner guilty of voluntary manslaughter, along with a deadly weapon sentencing enhancement, but acquitted him of first- and second-degree murder. (State's Lodging A-1 at 137-38.) Petitioner received a unified sentence of 30 years in prison with 25 years fixed. (State's Lodging D-6 at 1-2.)

Petitioner appealed, arguing that the trial court abused its discretion in sentencing Petitioner and in denying Petitioner's motion for reduction of sentence under Idaho Criminal Rule 35. (State's Lodging B-1, B-3.) The Idaho Court of Appeals affirmed, and the Idaho Supreme Court denied review. (State's Lodging B-4, B-7.)

Before the conclusion of his direct appeal, Petitioner filed a petition for state post-conviction relief. (State's Lodging C-1 at 8-41.) The state district court summarily dismissed all but one of Petitioner's claims. (State's Lodging C-2 at 348-75.) Following an evidentiary hearing, the court dismissed Petitioner's remaining claim—that trial counsel rendered ineffective assistance by failing to file a motion to suppress statements made by Petitioner. (*Id*. at 420-26.)

Petitioner appealed the dismissal of his post-conviction petition, arguing only that trial counsel rendered ineffective assistance by abandoning a self-defense theory,[1] that counsel's abandonment of the self-defense theory also denied Petitioner his right to a jury and right to a fair trial, and that the lower court did not address all of the claims in the post-conviction petition, including a claim that the prosecution withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (State's Lodging D-1, D-3.) The Idaho Court of Appeals affirmed. (State's Lodging D-6.) Petitioner sought review in the Idaho Supreme Court, raising only the claim that counsel was ineffective in abandoning a self-defense theory. (State's Lodging D-8.) The Idaho Supreme Court denied the petition for review. (State's Lodging D-9.)

Petitioner then filed a second Rule 35 motion in the state district court, asserting that his consecutive sentence for the firearm enhancement was illegal. (State's Lodging E-2 at 8-10.) That motion was denied. (*Id.* at 37-43.) Petitioner appealed, contending (a) that, under *State v. Caramillo*, 116 Idaho 413, 775 P.2d 1255, (Idaho Ct. App. 1989), the sentencing judge improperly described the firearm enhancement as a consecutive sentence, (b) that the fixed portion of his sentence exceeded the statutory maximum under Idaho law, (c) that his due process and equal protection rights were violated, and (d) that

---

[1] Petitioner asserted this ineffective assistance claim under both *Strickland v. Washington*, 466 U.S. 668 (1984), and *United States v. Cronic*, 466 U.S. 648 (1984). *Strickland* requires that the petitioner establish both deficient performance of counsel and prejudice from that deficient performance. 466 U.S. at 691. Under *Cronic*, prejudice from counsel's performance is presumed where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." 466 U.S. at 659. The Idaho Court of Appeals declined to address Petitioner's *Cronic* argument because it had not been raised to the state district court. (State's Lodging D-6 at 5 n.2.)

he was entitled to counsel and a telephonic hearing prior to denial of the Rule 35 motion. (State's Lodging F-1.) The Idaho Court of Appeals affirmed, and the Idaho Supreme Court denied review. (State's Lodging F-4, F-7.)

In his instant federal petition, Petitioner raises numerous claims.[2] Claim A asserts that the prosecution violated *Brady v. Maryland* by failing to disclose a ballistics report and "exculpatory witness statements." (Dkt. 15 at 4.) Claim B asserts numerous sub-claims. First, Claim B asserts ineffective assistance of trial counsel—under both *Strickland v. Washington*, 466 U.S. 668 (1984), and *United States v. Cronic*, 466 U.S. 648 (1984)—based on counsel's alleged abandonment of a self-defense theory, including counsel's failure to present evidence that the victim and his companions were intoxicated. (*Id*. at 6-7.) Claim B also asserts that Petitioner's sentence is illegal—presumably as a violation of due process—because the firearm enhancement purportedly extended the fixed portion of Petitioner's sentence beyond the statutory maximum penalty; Petitioner also asserts that the enhancement penalty was improperly characterized by the sentencing judge as a consecutive sentence.[3] (*Id*. at 7.) Finally, Claim B appears to contend that trial/sentencing and direct appeal counsel may have rendered ineffective assistance in failing to raise the due process argument regarding Petitioner's sentence. (*Id*. at 5-8.)

---

[2]     Although the First Amended Petition identifies only two claims—Claim A and Claim B— multiple sub-claims are contained in Claim B, including claims of ineffective assistance of counsel and claims challenging Petitioner's sentence.

[3]     Because these sentencing portions of Claim B were inserted in the body of the petition amongst allegations of ineffective assistance of counsel, the Court in its Initial Review Order mistakenly overlooked them when describing Petitioner's claims. (Dkt. 16 at 2.)

## DISCUSSION

**1.     Petitioner's Claim that the Firearm Sentencing Enhancement Was Mischaracterized Is Noncognizable**

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[F]ederal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Petitioner's assertion, in Claim B, that the trial court "erred when characterizing the sentence for the deadly weapon enhancement as 'consecutive' to the voluntary manslaughter sentence" (Dkt. 15 at 7), appears to be based—as it was in state court (*see* State's Lodging D-1, D-6 at 2)—on a claim that Idaho law treats such enhancements as part of one continuous sentence, rather than as a separate consecutive sentence. This claim relies on a state law principle set forth in *State v. Caramillo*, which held that "[i]t is well established in [Idaho] case law that, regardless of the terminology employed, a firearm enhancement is part of a single sentence." 775 P.2d at 1256. The state court of appeals rejected this state-law claim, noting that *Caramillo* did not afford Petitioner relief because his sentence was substantively legal, despite the sentencing court's use of inaccurate terminology. (State's Lodging D-6 at 2-3.)

Because Petitioner's claim that the firearm enhancement was mischaracterized as a consecutive sentence relies only on state law, that claim is subject to dismissal as noncognizable.

**2.     All of Petitioner's Other Claims, with the Exception of His Self-Defense Ineffectiveness Claim under *Strickland v. Washington*, Are Subject to Dismissal as Procedurally Defaulted**

*A.     Procedural Default Standards of Law*

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). General references in state court to "broad constitutional principles, such as due process, equal protection, [or] the right to a fair trial," are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). The law is clear that, for proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62. Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"To qualify as an adequate procedural ground, a state rule must be firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal quotation marks omitted). That is, the state procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar can be considered adequate even if it is a discretionary rule, even though "the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard v. Kindler*, 558 U.S. 53, 61 (2009). A state rule's "use of an imprecise standard . . . is no justification for depriving a rule's language of any meaning." *Walker*, 562 U.S. at 318 (internal quotation marks and alteration omitted).

A state procedural bar is "independent" of federal law if it does not rest on, and if it is not interwoven with, federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003). A rule will not be deemed independent of federal law "if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed." *Id.* (internal quotation marks and alteration omitted); *see also Ake v. Oklahoma*, 470 U.S. 68, 75 (1985) (stating that "when resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our jurisdiction is not precluded," and holding that a state waiver rule was not independent because, "[b]efore applying the waiver doctrine to a constitutional question, the state court must rule, either explicitly or implicitly, on the merits of the constitutional question").

### B.    *Analysis of Procedural Default*

The most straightforward manner in which to resolve the exhaustion and procedural default status of Petitioner's federal claims is to review which claims were raised and addressed on the merits in the state court appellate proceedings. On direct appeal, Petitioner argued only that the trial court abused its discretion, under state law, in sentencing Petitioner and in denying Petitioner's first Rule 35 motion. (State's Lodging B-1, B-3.) Neither is a federal claim cognizable in this Court. *See* 28 U.S.C. § 2254(a); *Lewis*, 497 U.S. at 780. Thus, Petitioner did not properly exhaust any federal claim on direct appeal.

Petitioner initially raised several arguments on appeal from the dismissal of his state post-conviction petition. However, in the petition for review to the Idaho Supreme Court, Petitioner raised only the claim that his trial counsel was ineffective for abandoning a self-defense theory. (State's Lodging D-1, D-3, D-8.) Thus, he did not fairly present his other claims. *See O'Sullivan v. Boerckel*, 526 U.S. at 847 (holding that, to fairly present a claim, petitioners must include that claim in a "petition[] for discretionary review when that review is part of the ordinary appellate review procedure in the State").

Moreover, with respect to the self-defense ineffectiveness claim, the Idaho Court of Appeals held that Petitioner was barred from asserting that he was entitled to a presumption of prejudice under *Cronic* because he had not raised this argument in the lower court. (State's Lodging D-6 at 5 n.2.) Petitioner has not established that this state appellate rule—barring claims raised for the first time on appeal—is inadequate or is dependent on federal law. *See Martinez v. Klauser*, 266 F.3d at 1093-94; *Bennett*, 322 F.3d at 581; *see also State v. Fodge*, 824 P.2d 123, 126 (Idaho 1992) ("The longstanding rule of this Court is that we will not consider issues that are presented for the first time on appeal.") (quoting *Sanchez v. Arave*, 815 P.2d 1061, 1062 (Idaho 1991)). Therefore, during state post-conviction proceedings, Petitioner fairly presented only his self-defense ineffectiveness claim under *Strickland*.

Finally, Petitioner raised the following sentencing claims on appeal from the denial of his second Rule 35 motion: (1) the sentencing court mischaracterized the firearm enhancement; (2) Petitioner's sentence exceeded the statutory maximum penalty;

(3) the sentence violated Petitioner's right to due process and equal protection right; and

(4) that Petitioner was entitled to the appointment of counsel and a telephonic hearing

prior to denial of the motion. (State's Lodging F-1, F-3.) However, the Idaho Court of

Appeals declined to address the claims—other than the mischaracterization claim, which,

as discussed above, is noncognizable—because Petitioner did not raise them in the state

district court. (State's Lodging F-4 at 2 n.1 and 3 n.2.) As noted above, this rule is an

adequate and independent state procedural ground, and the claims that the state court

declined to address on appeal from denial of Petitioner's second Rule 35 motion are,

therefore, procedurally defaulted.

The only federal claim that was fairly presented to the highest state court and

decided on the merits is Petitioner's claim, under *Strickland*, that his trial counsel

rendered ineffective assistance by abandoning a self-defense theory and by failing to

present evidence that the victim was intoxicated. This claim will be addressed on the

merits in Section 3, below.

### C.      *Petitioner Has Not Established a Legal Excuse for the Default*

The conclusion that most of Petitioner's claims are procedurally defaulted does

not end the inquiry. If a claim is procedurally defaulted, a federal court can still hear the

merits of the claim if the petitioner meets one of two exceptions: (1) a showing of

adequate legal cause for the default and prejudice arising from the default, *see Coleman*

*v. Thompson*, 501 U.S. 722, 731 (1991), or (2) a showing of actual innocence, which

means that a miscarriage of justice will occur if the claim is not heard in federal court, *see*

*Schlup v. Delo*, 513 U.S. 298, 329 (1995); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).[4]

Although Petitioner does not argue that cause and prejudice exist to excuse the default of

his claims, he does assert that he acted in self-defense when he killed the victim. (*See*

*generally* Dkt. 29.) Therefore, it appears that Petitioner may be attempting to assert an

actual innocence gateway argument.

Actual innocence, in context of the miscarriage of justice exception to procedural

default, "means factual innocence, not mere legal insufficiency." *Bousley v. United*

*States*, 523 U.S. 614, 623 (1998). In asserting actual innocence, a petitioner must

"support his allegations of constitutional error with new reliable evidence—whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A

procedurally defaulted claim may be heard under the miscarriage of justice exception

only if "in light of all of the evidence, 'it is more likely than not that no reasonable juror

would have found [Petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*,

719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another

way, it must be more likely than not that *every* reasonable juror would vote to acquit.

This is an extremely demanding standard that "permits review only in the

'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). A court considering

whether a petitioner has established actual innocence must consider "all the evidence, old

---

[4]    Neither an assertion of cause and prejudice nor an assertion of actual innocence under *Schlup* is an independent constitutional claim. Rather, these are federal *procedural* arguments that, if sufficiently established by the petitioner, allow a federal court to consider the merits of an otherwise procedurally-defaulted constitutional claim.

and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653

F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation marks omitted). The actual

innocence analysis "does not turn on discrete findings regarding disputed points of fact,

and '[i]t is not the district court's independent judgment as to whether reasonable doubt

exists that the standard addresses.'" *House v. Bell*, 547 U.S. 518, 539-40 (2006) (quoting

*Schlup*, 513 U.S. at 329 (alteration in original)). Rather, the court must "make a

probabilistic determination about what reasonable, properly instructed jurors would do."

*Schlup*, 513 U.S. at 329.

Petitioner has submitted no new, credible evidence to support his claim of actual

innocence. Therefore, he has not satisfied the strict standard for application of the

miscarriage of justice exception, and he is not excused from procedural default.

The Court will now address the merits of the remaining claim—that Petitioner's

trial counsel was ineffective, under *Strickland*, based on counsel's alleged abandonment

of a self-defense theory, including counsel's failure to present evidence of the victim's

intoxication.

**3.     Petitioner Is Not Entitled to Habeas Relief on His Claim that Trial Counsel
        Rendered Ineffective Assistance by Abandoning a Self-Defense Theory**

>    ***A.     Standard of Law for Review on the Merits***

Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), federal habeas relief is limited to instances where the state

court's adjudication of the petitioner's claim

>           (1)     resulted in a decision that was contrary to, or
>                   involved an unreasonable application of, clearly

established Federal law, as determined by the
Supreme Court of the United States; or

(2)     resulted in a decision that was based on an
unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

28 U.S.C. § 2254(d). In determining whether a petitioner is entitled to habeas relief, a

federal court reviews the state court's "last reasoned decision"—here, the decision of the

Idaho Court of Appeals on appeal from the dismissal of Petitioner's state post-conviction

petition. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

When a party contests the state court's legal conclusions, including application of

the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests:

the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established

federal law "if the state court applies a rule different from the governing law set forth in

[the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court]

[has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694

(2002). Under the second test, to satisfy the "unreasonable application" clause of

§ 2254(d)(1) the petitioner must show that the state court—although identifying "the

correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably

applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*,

529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which

a state court unreasonably applies [Supreme Court] precedent; it does not require state

courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (emphasis omitted).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

AEDPA deference is required even where the state court denied a petitioner's claim without expressly addressing it. In such a case, the federal court must "conduct an independent review of the record to determine what arguments or theories could have supported the state court's decision"; the court must then determine "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a decision of the Supreme Court." *Bemore v. Chappell*, 788 F.3d 1151, 1161 (9th Cir. 2015) (internal quotation marks and alterations omitted).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

As to the facts, the United States Supreme Court has clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determination of the state court was not unreasonable. *See Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014).

When a petitioner contests the reasonableness of the state court's factual determinations based entirely on the state court record, a federal court must undertake a § 2254(d)(2) analysis. *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). There are two general ways to challenge factual findings as unreasonable under § 2254(d)(2). "First, a petitioner may challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record. Second, a petitioner may challenge the fact-finding process itself on the ground

that it was deficient in some material way." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146

(9th Cir. 2012) (internal citations omitted).

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state

court decision was based upon factual determinations that were "unreasonable . . . in light

of the evidence presented in the State court proceeding." A "state-court factual

determination is not unreasonable merely because the federal habeas court would have

reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301

(2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under

AEDPA is not whether a federal court believes the state court's determination was

incorrect but whether that determination was unreasonable—a substantially higher

threshold.").

If a petitioner satisfies § 2254(d)—either by showing that the state court's

adjudication of a claim was contrary to, or an unreasonable application of Supreme Court

law or by establishing that the state court's factual findings were unreasonable—then the

federal habeas court must review the petitioner's claim de novo.[5] *Hurles v. Ryan*, 752

F.3d 768, 778 (9th Cir. 2014). When considering a petitioner's habeas claim de novo, a

district court may, as in the pre-AEDPA era, draw from both United States Supreme

Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague*

*v. Lane*, 489 U.S. 288 (1989). Even under de novo review, however, if the factual

---

[5]     De novo review is also required where the state appellate court did not decide a properly-asserted
claim or where an adequate excuse for the procedural default of a claim exists. *Pirtle v. Morgan*, 313 F.3d
1160, 1167 (9th Cir. 2002); *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

findings of the state court are not unreasonable under § 2254(d)(2), the Court must apply

the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the

state courts. *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002). Contrarily, if a

state court factual determination is unreasonable, the federal court is not limited by

§ 2254(e)(1) and may consider evidence outside the state court record, except to the

extent that § 2254(e)(2) might apply. *Murray*, 745 F.3d at 1000.

### B. Clearly-Established Law

The Sixth Amendment to the United States Constitution provides that a criminal

defendant has a right to the effective assistance of counsel in his defense. The standard

for ineffective assistance of counsel claims was identified in *Strickland v. Washington*,

466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show

that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment," and (2) those errors "deprive[d] the

defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A petitioner must

establish both deficient performance and prejudice to prove an ineffective assistance of

counsel claim. *Id*. at 697. On habeas review, the court may consider either prong of the

*Strickland* test first, or it may address both prongs, even if one is deficient and will

compel denial. *Id*.

Whether an attorney's performance was deficient is judged against an objective

standard of reasonableness. *Id*. at 687-88. A reviewing court's inquiry into the

"reasonableness" of counsel's actions must not rely on hindsight:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of a defense, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91. Further, counsel is not deficient in an area where an investigation would not have been fruitful for the defense.

The Ninth Circuit has provided some insight into the *Strickland* standard when evaluating an attorney's "strategy calls." These cases are instructive in the Court's assessment of whether the state court reasonably applied *Strickland*. *Duhaime*, 200 F.3d at 600. First, tactical decisions do not constitute ineffective assistance simply because, in retrospect, better tactics are known to have been available. *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). Second, a mere difference of opinion as to tactics does not render counsel's assistance ineffective. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981). Third, "counsel's investigation must determine trial strategy, not the other way around." *Weeden v. Johnson*, 854 F.3d 1063, 1070 (9th Cir. 2017); *see also id.* ("Weeden's counsel could not have reasonably concluded that obtaining a psychological examination would conflict with his trial strategy without first knowing what such an examination would reveal.").

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an
> ineffectiveness claim must consider the totality of the
> evidence before the judge or jury. Some of the factual
> findings will have been unaffected by the errors, and factual
> findings that were affected will have been affected in
> different ways. Some errors will have had a pervasive effect
> on the inferences to be drawn from the evidence, altering the
> entire evidentiary picture, and some will have had an isolated,
> trivial effect. Moreover, a verdict or conclusion only weakly
> supported by the record is more likely to have been affected
> by errors than one with overwhelming record support. Taking
> the unaffected findings as a given, and taking due account of
> the effect of the errors on the remaining findings, a court
> making the prejudice inquiry must ask if the defendant has
> met the burden of showing that the decision reached would
> reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result

must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112.

The foregoing standard, giving deference to counsel's decision-making, is the de

novo standard of review. Another layer of deference—to the state court decision—is

afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims

on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application
> of the *Strickland* standard was unreasonable. This is different
> from asking whether defense counsel's performance fell
> below *Strickland*'s standard. Were that the inquiry, the
> analysis would be no different than if, for example, this Court
> were adjudicating a *Strickland* claim on direct review of a
> criminal conviction in a United States district court. Under
> AEDPA, though, it is a necessary premise that the two
> questions are different. For purposes of § 2254(d)(1), "an
> unreasonable application of federal law is different from an
> incorrect application of federal law." *Williams*, *supra*, at 410,
> 120 S. Ct. 1495. A state court must be granted a deference
> and latitude that are not in operation when the case involves
> review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101. That is, when evaluating a claim of ineffective assistance of counsel in a federal habeas proceeding under § 2254(d), the Court's review of that claim is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (internal quotation marks omitted).

> ### C. The Decision of the Idaho Court of Appeals Was Not Contrary to, or an Unreasonable Application of, Clearly-Established Federal Law, Nor Was It Based on an Unreasonable Determination of the Facts

Petitioner claims that his trial counsel abandoned the self-defense theory and presented only a defense that Petitioner committed manslaughter rather than murder. Petitioner also specifically claims that counsel should have "present[ed] a readily available toxicology report," establishing that the victim's blood alcohol content was 249 mg/dL (nearly 0.25%), as well as other evidence that the victim's companions were also intoxicated. (Dkt. 15 at 7.)

The state district court determined during post-conviction proceedings that counsel abandoned a self-defense theory to focus on "defeat[ing] the charges of first and second degree murder, which she did successively." (State's Lodging C-1 at 367.) The lower post-conviction court determined that this decision was reasonable, based on Petitioner's statement to police that he was not afraid of the victim. (*Id.*)

However, on appeal, the Idaho Court of Appeals determined, as a mixed question of law and fact, that Petitioner's trial counsel did *not* abandon the self-defense theory. (State's Lodging D-6 at 6-8.) The court relied on the following from the trial record:

> During opening statements, defense counsel discussed certain facts that could potentially establish the elements of self-

defense. These facts included: the victim made threatening statements; the victim was within wingspan of Williams' vehicle; and the victim grabbed and scratched Williams' neck. During cross-examination, defense counsel elicited testimony related to self-defense, including that the victim and his friends followed the Williams brothers "with the intent of kicking their asses"; that the victim was so close to the vehicle that Williams could not shut the door; that Williams might have told the victim, "[y]ou got the wrong guy"; and that Williams told one of the officers that he felt threatened when he heard someone shout, "get your gun." On direct examination, defense counsel elicited testimony from Williams that the victim threatened to kill him; that he was in fear of death and great bodily harm; that he told the victim "you've got the wrong guy, please stop"; that the victim said "I've got something for you," and lunged towards him; and that even after he was shot, the victim grabbed Williams by the collar.

The district court gave a self-defense instruction. During closing statements, the prosecutor went through the self-defense instruction and told the jury that Williams did not act in self-defense. Defense counsel did not reread the self-defense instruction during her closing statement, but did discuss with the jury that certain of the elements of self-defense were satisfied, but it was for the jury to determine whether Williams' actions were reasonable under the circumstances. Williams specifically argues on appeal that counsel's failure to tell the jury why Williams' actions were reasonable was deficient performance. However, defense counsel argued several times during her closing statement that Williams defended himself: "[u]nfortunately, [victim] did get someone who could defend themselves"; "[y]ou've got an individual that's approaching another individual threatening to kill him, and another man taking out a weapon to protect himself"; "[d]o I run the risk of receiving serious bodily injury or maybe even death for myself, or do I defend myself like is [sic] my right under the law"; "[b]ut you put yourself in Mr. Williams' situation, and can you say beyond a reasonable doubt that what Mr. Williams did that day in defending himself was wrong? I don't think you can do that." These arguments have no direct bearing on voluntary manslaughter, which Williams asserts counsel was admitting.

. . . . During her opening statement, defense counsel argued that "the State has not met its burden with regard to first-degree murder." Contrary to Williams' claim, this statement is not a concession of guilt. Opening statements serve to inform the jury of the issues of the case and briefly outline the evidence each litigant intends to introduce to support his or her allegations or defenses, as the case may be. Defense counsel's statement was not a concession of Williams' guilt to voluntary manslaughter or an abandonment of self-defense, but was simply a statement to inform the jury that the State would be unable to prove that which it sought to prove. During her closing statement, defense counsel argued that Williams' actions were in the "heat of passion and a sudden quarrel," which do relate to manslaughter. Nevertheless, she also argued self-defense as noted above. As defense counsel's statements do not expressly concede guilt to voluntary manslaughter, and as the record demonstrates that self-defense was in play throughout the trial, Williams' assertion that self-defense was not presented is incorrect.

(*Id.* at 6-7 (alterations in original) (internal citations omitted).)

In addition to the abandonment determination, the court of appeals also addressed Petitioner's argument that trial counsel should have presented evidence of the victim's intoxication. The court rejected this assertion, stating that Petitioner had provided "no evidence, in the form of expert opinion or otherwise, to support his claim" that the victim's alleged "aggression and dangerous behaviors could have been magnified by his intoxication level" or that the victim "continued to walk towards [Petitioner] after being shot the first and second time." (*Id.* at 8 (emphasis omitted).) This appears to be a determination that Petitioner had not shown prejudice from his counsel's failure to present the intoxication evidence.

The Idaho Court of Appeals' conclusion that trial counsel did not abandon the self-defense theory is supported by the record and is objectively reasonable. Trial counsel

emphasized the victim's actions in provoking Petitioner's response and explicitly referred to Petitioner's right to defend himself. Counsel presented evidence that (1) Petitioner reasonably acted in self-defense, and (2) even if he did not reasonably act in self-defense, he did not commit murder. These are objectively reasonable alternative arguments for an attorney to make. The Idaho Court of Appeals' determination that the self-defense theory was "in play" throughout the trial was not unreasonable under either § 2254(d)(1) or (d)(2).

Additionally, the state court's legal conclusion that Petitioner had not established prejudice from counsel's failure to present evidence of the victim's intoxication is not contrary to, or an unreasonable application of, clearly-established Supreme Court precedent under 28 U.S.C. § 2254(d)(1). The question regarding self-defense was whether Petitioner's actions in defending himself were reasonable. That the victim might have been highly intoxicated does not strongly bolster Petitioner's self-defense claim. It is not necessarily the case that an intoxicated victim would transform an otherwise unreasonable action into a reasonable one, and Petitioner has not established a reasonable probability that, had counsel presented evidence of intoxication, Petitioner would have been acquitted of manslaughter. Therefore, the Idaho Court of Appeals determination was objectively reasonable, and Petitioner is not entitled to habeas relief.

## CONCLUSION

Petitioner's claim regarding the mischaracterization of the firearm enhancement is based on state law and, therefore, is not cognizable. Petitioner's claim that trial counsel

rendered ineffective assistance in abandoning a self-defense theory fails on the merits, and Petitioner's remaining claims are procedurally defaulted.

## ORDER

**IT IS ORDERED:**

1.  All but one of Petitioner's claims are subject to dismissal, and the remaining claim—the portion of Claim B asserting ineffective assistance of counsel related to the self-defense theory—fails on the merits pursuant to 28 U.S.C. § 2254(d). Therefore, the Amended Petition for Writ of Habeas Corpus (Dkt. 15) is DISMISSED IN PART and DENIED IN PART, and this entire action is DISMISSED with prejudice.

2.  The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: August 28, 2017

B. Lynn Winmill
Chief Judge
United States District Court